UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN THOMAS SKORDAS,

      Plaintiff,

v.                                    Case No:   5:16-cv-117-Oc-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

**<u>OPINION AND ORDER</u>**

Plaintiff, John Thomas Skordas, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions.  For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on October 25, 2010, alleging an onset date of June 22, 2006.  (Tr. 256-68, 312).  Plaintiff subsequently amended his alleged onset date to March 1, 2012.  (Tr. 21, 45).  Plaintiff's claims were denied initially and upon reconsideration.  (Tr. 149-54, 158-61).  Plaintiff requested a hearing and on May 1, 2012, a hearing was held before Administrative Law Judge Philemina M. Jones (the "ALJ").  (Tr. 82-120, 162).   On August 6, 2012, the ALJ entered a decision finding that Plaintiff was not under a disability.  (Tr. 125-44).  Plaintiff filed a request for review and, on November 29, 2013, the Appeals Council granted Plaintiff's request and remanded the case back to the ALJ for further administrative proceedings.  (Tr. 145-48, 208-10).

On June 12, 2014, a second administrative hearing was held before the ALJ.  (Tr. 41-81).  On September 10, 2014, the ALJ entered a hearing decision finding that Plaintiff was not disabled.  (Tr. 18-40).  Plaintiff filed a request for review and, on February 1, 2016, the Appeals Council denied Plaintiff's request.  (Tr. 3-9).  Plaintiff initiated this action by filing a Complaint (Doc. 1) on March 4, 2016.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 22, 2006, the originally alleged onset date. (Tr. 24). At step two, the ALJ found that Plaintiff had the following severe impairments: depression, panic disorder, post-traumatic stress disorder, and back and neck pain. (Tr. 24). In addition, the ALJ found that as of April 2013, Plaintiff had the severe impairment of daytime sleepiness. (Tr. 24). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift 10 pounds occasionally and less than 10 pounds frequently. He can stand and walk for 2 hours in 8 and sit 6 in 8, can occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant can occasionally work with public and co-workers and requires alternating between sitting and standing every 15 to 20 minutes and would have to stretch 3-5 minutes, staying at workstation, and should perform no overhead reaching. The claimant can adjust to the work setting, but cannot work at production rate pace or a job with strict production quotas, or in a fast paced work environment, he should work in a structured setting where he is given job duties and does not have to set them himself, can perform jobs that can be learned in 30 days or less and should perform the same type of work duties over and over during the day, and can follow work like procedures and instructions.

(Tr. 25-26). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a light truck driver, mechanic, and lubrication servicer. (Tr. 32).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 33). Specifically, the ALJ found that Plaintiff can perform the jobs "addresser" and "document preparer." (Tr. 33). The ALJ concluded

that Plaintiff had not been under a disability from March 1, 2012, through the date of the decision, September 10, 2014. (Tr. 34).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ failed to apply the correct legal standards to the medical opinions of record; (2) whether the ALJ failed to apply the correct legal standards to Plaintiff's severe daytime sleepiness impairment; and (3) whether the ALJ failed to fully and fairly develop the record with regards to Dr. Hamlin's opinion.

### a) Whether the ALJ failed to apply the correct legal standards to the medical opinions of record.

Plaintiff argues that the ALJ erred by failing to properly weigh the medical evidence of record, specifically, the evidence from examining physicians Paul S. Suich, Ph.D., and Ivan J. Wortman, M.D., as well as the medical evidence from Park Place Behavorial Health. (Doc. 16 p. 11-17). In response, Defendant argues that the ALJ expressly discussed the findings of Drs. Suich and Wortman, and the ALJ's decision reflects that she considered their evaluations in determining Plaintiff's RFC. (Doc. 17 p. 9).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on

the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The Court begins with the ALJ's treatment of Dr. Suich's opinion.  The record shows that on December 17, 2010, Dr. Suich performed a psychological evaluation of Plaintiff at the request of the Division of Disability Determinations. (Tr. 557-59).  Dr. Suich found that Plaintiff had limited processing speed, mildly impaired auditory and language abilities, inability to complete all verbal commands without errors, mildly impaired recent memory, mildly impaired written computation, moderately impaired judgment with self-care and social problem-solving, and limited understanding of personal safety, solution focused ideas, and social interactions.  (Tr. 558).  Dr. Suich diagnosed recurrent and moderate major depressive disorder; panic disorder with agoraphobia; problems with relationships, finances, and work; and a GAF score of 50.  (Tr. 559).  He recommended seeing a mental health professional, seeing a psychiatrist, medication management, and personality testing.  Dr. Suich opined that "the symptoms based on client reports and clinical observations appear to be moderately/severely impacting activities of daily living, vocational performance, and interpersonal interactions."  (Tr. 559).

In her decision, the ALJ noted Dr. Suich's opinion and summarized his findings.  (Tr. 27-28).  The ALJ, however, failed to state the weight she accorded the opinion and the reasons therefor.  The ALJ's failure to do so constitutes a violation of *Winschel*'s directive to articulate the weight accorded to the opinion.  Defendant's contention that Dr. Suich was only an examining physician whose opinion was not entitled to any deference does not alter the fact that the ALJ was required to weigh Dr. Suich's opinion.

In a similar way, the ALJ erred in her treatment of Dr. Wortman's opinion.  The records shows that Dr. Wortman performed a physical evaluation of Plaintiff on March 30, 2011.  (Tr.

601-04).    Dr. Wortman noted depression for thirteen years, two suicide attempts, not wanting to be around people, medication makes him violent, anxiety, panicking, five years of PTSD, nightmares, and inability to sleep.  (Tr. 601). The examination revealed a chest scar, a surgery scar on the left knee, tenderness in the neck, flat affect, and crying when discussing the PTSD. (Tr. 602-603).  Dr. Wortman diagnosed anxiety and depression by history, PTSD by history needing a psychiatric evaluation, neck pain, sleep apnea by history, and hypertension by history.  (Tr. 604). Dr. Wortman opined that Plaintiff's "subjective complaints are consistent with the objective medical findings."  (Tr. 604).

In her decision, the ALJ acknowledged and summarized Dr. Wortman's evaluation.  (Tr. 28).  Again, however, the ALJ did not state the weight she accorded the opinion.  The ALJ's failure to do so violated *Winschel*'s directive and requires remand.

The Court reaches the same result in respect to the evidence from Park Place Behavior Health Care.  The ALJ acknowledged and briefly summarized the medical evidence from Park Place Behavior Health Care, but failed to weigh this evidence in explaining her RFC finding.  Upon remand, the Court will require the ALJ to state the weight accorded to the opinions of Dr. Suich, Dr. Wortman, and the evidence from Park Place Behavior Health Care.

**b) Whether the ALJ failed to apply the correct legal standards to Plaintiff's severe daytime sleepiness impairment.**

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's severe impairment of "daytime sleepiness" in the RFC finding.  (Doc. 16 p. 17-18).  Plaintiff argues that the ALJ's finding that Plaintiff was capable of performing the same type of work duties "over and over" was inconsistent with Plaintiff's daytime sleepiness.  (Doc. 16 p. 18).  Defendant contends that the ALJ properly considered Plaintiff's testimony regarding his inability to sleep at night and substantial evidence supports the ALJ's assessment of Plaintiff's RFC.  (Doc. 17 p. 12).

"An impairment may meet this minimal definition of severity without materially affecting the claimant's RFC." *Davis v. Comm'r of Soc. Sec.,* 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013). Thus, the fact that the ALJ found that Plaintiff had the severe impairment of daytime sleepiness does not mean that the ALJ was required to include a limitation corresponding to this severe impairment in the RFC.

In her decision, the ALJ specifically considered Plaintiff's testimony regarding his inability to sleep at night and found the medical evidence of record demonstrated Plaintiff's repeated reports of sleeping eight hours per night from June 2011 through December 2012. (Tr. 29, 656, 658, 660, 662, 664, 668, 670, 700, 702, 704, 706, 708, 710). The ALJ noted that Plaintiff testified in July 2014 that he averaged six hours of sleep per night and that he was getting used to his CPAP machine. (Tr. 30, 68). Despite this analysis of Plaintiff's nighttime sleeping habits, the ALJ never addressed Plaintiff's complaints of daytime sleepiness directly. On review, it seems the ALJ's treatment of Plaintiff's night time sleep schedule shows that his complaints of daytime sleepiness are not entirely credible. This finding, however, is never directly stated. As this case is already being remanded, the Court will require the ALJ to directly address Plaintiff's complaints of daytime sleepiness in formulating the RFC.

**c) Whether the ALJ failed to fully and fairly develop the record with regards to Dr. Hamlin's opinion.**

The record shows that on January 3, 2011, Rebecca J. Keillor, the disability examiner assigned to Plaintiff's case, completed a Report of Contact form that stated the following:

> MDE contacted PPCS today for clarification concerning the PRTF and MRFC. Discussion with Dr. Hamlin was notable for confirming that he does beleive [sic] this clmt is an allowance based on his "marked" impairment in social functioning. Dr. Hamlin noted in conversation that clmt's 3rd Pty contact --sister-- appeared extremely credible and that the clmt would not be able to function in a job situation due to his high dependence upon her and the mother for even simple tasks. [Medical

> evidence of record] was also consistent with this information.   MDE
> thanked him for the clarifications and the call was concluded.

(Tr. 382).   According to Plaintiff, this report of contact confirms that Arthur Hamlin, Psy.D., a

PRFT and MRFC before January 3, 2011, and was of the opinion that Plaintiff was markedly

limited in his ability to maintain social functioning and would not be able to function in a job

situation.   (Doc. 16 p. 10).   Plaintiff notes that the pre-January 3, 2011, PRTF and MRFC

referenced by Ms. Keillor are not contained in the record and suggests that they were either

destroyed or removed from the file.   (Doc. 16 p. 10).   The record does contain a PRTF and MRFC

completed by Dr. Hamlin on January 13, 2011, but these opinions do not contain the limitation

findings that Ms. Keillor attributed to Dr. Hamlin on January 3, 2011. (Tr. 561-77).   Notably,

contrary to Ms. Keillor's note, Dr. Hamlin's MRFC reflects that he found Plaintiff to be only

"moderately" limited in one category of social interaction and that Plaintiff retained "the capability

of adjusting to a work environment" and had that Plaintiff had "the capacity to follow work-like

procedures and instructions."   (Tr. 562-63).

Plaintiff argues that Ms. Keillor's statement casts doubt on the reliability of the forms

completed on January 13, 2011, and calls into question whether or not these forms were

fraudulently filled out and signed with Dr. Hamlin's name.   (Doc. 16 p. 11).   Plaintiff suggests that

the pre-January 3, 2011 PRTF and MRFC referred to by Ms. Keillor were purposefully destroyed

or removed from the file.   (Doc. 16 p. 10).   Plaintiff argues that there is no indication in the ALJ's

decision that the ALJ reviewed Ms. Keillor's statement or that the ALJ attempted to resolve the

inconsistencies regarding Dr. Hamlin's opinion.   (Doc. 16 p. 11).   Plaintiff contends that the ALJ

erred by failing develop the record as to this inconsistency.   (Doc. 16 p. 11).

In response, Defendant argues that Plaintiff had the burden of proving that he was disabled

and the ALJ was not obligated to act as his counsel, especially given that Plaintiff has been

represented by counsel for years.  (Doc. 17 p. 12).  Defendant argues that before a case can be remanded to the Commissioner for further development of the record, a claimant must show prejudice.  (Doc. 17 p. 13).  Defendant argues that Plaintiff can only speculate that additional evidence from Dr. Hamlin might help his claimant.  (Doc. 17 p. 13).

Because a hearing before an ALJ is not an adversary proceeding, an ALJ has a duty to fully and fairly develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).  Although the ALJ has a duty to develop the record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record."  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

Here, the Court is not persuaded that the ALJ abdicated her duty to fully and fairly develop the record by failing to resolve the apparent contradiction between Ms. Keillor's references to opinions of Dr. Hamlin completed before January 3, 2011, and the forms contained in the record dated January 13, 2011.  However, as this Court is already remanding the case for the reasons explained above, the Court finds it appropriate for the ALJ to resolve this inconsistency in the record upon remand.

## III.    Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties